UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

        -v.-                                                      ORDER

MICHAEL SCRONIC,                                  18-CR-43 (CS)

                Defendant.
-------------------------------------------------------x

Seibel, J.

      Before the Court is Defendant Michael Scronic's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), known as "compassionate release," (Docs. 74, 76, 78),[1] and the Government's opposition thereto, (Doc. 77).[2]

      On September 27, 2018, Defendant was sentenced principally to ninety-six months' imprisonment. (Doc. 48.) That sentence was below the advisory Sentencing Guidelines range of 121-151 months. (Doc. 33 ("PSR") ¶ 93.) His surrender date was November 26, 2018, (Doc. 48), and he has served approximately twenty-four of those ninety-six months.[3]

      Under 18 U.S.C. § 3582(c)(1)(A), I may, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce a sentence if extraordinary and compelling reasons justify such action

---

     [1]Defendant submitted as part of his reply medical exhibits which the Court has filed under seal.

     [2]The Government shall send to chambers a hard copy of Defendant's medical records for filing under seal.

     [3]Defendant argues that he has served 46% of his sentence, but his numbers do not add up. According to the Bureau of Prisons website, his release date is September 18, 2025, which as I understand it presumes Defendant will receive good time credit. Assuming that date is correct, he has approximately 58 months to ago, and is thus not even one-third of the way through his sentence. Defendant's calculation assumes a one-year reduction for the Residential Drug Abuse Program, but it is hard to see how he could be eligible for that program, given that he denied to Probation having any drug or alcohol problem. (PSR ¶ 72.) His number also assumes programming credits, but he presents no basis for how he calculated the amount.

and it is consistent with the relevant policy statements of the Sentencing Commission. Policy Statement 1B1.13 imposes similar requirements, along with the provision that the Defendant not be a danger to the safety of any other person or the community. Application Note 1 to Policy Statement 1B1.13 describes four potential extraordinary and compelling reasons: 1) the defendant has a terminal medical condition or because of serious health condition from which he is not expected to recover is substantially diminished in his ability to provide self-care; 2) the defendant is at least 65 years old, has served 75% or 10 years of his sentence, and is experiencing a serious deterioration in health because of the aging process; 3) family circumstances; and 4) an extraordinary and compelling reason other than or in combination with one of the above.[4]  "The defendant has the burden to show he is entitled to a sentence reduction" under Section 3582(c)(1)(A). *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Defendant argues that the dangers presented by the coronavirus pandemic at the Fort Dix camp, combined with medical conditions – specifically, obesity, cancer and heart disease – that put him at increased risk for a severe case, amount to an extraordinary and compelling reason. His medical records, however, do not show that he suffers from conditions that put him at

---

[4]Section 1(D) of the Application Note states: "Other Reasons – As determined by the Director of the Bureau of Prisons ["BOP"], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other three reasons]." But "Application Note 1(D) does not apply to compassionate release motions brought directly to the court by a defendant," *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020), so I am not constrained by the BOP's or the Application Note's interpretation of extraordinary and compelling circumstances, *see id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

significantly increased risk. He is overweight but not obese, or at best barely so.[5] He does not have cancer; he had a skin cancer removed two years ago with no further problems. He does not have any of the heart conditions listed by the CDC. He reported to a doctor in 2018 that he sometimes experienced palpitations or shortness of breath with vigorous exercise, which is hardly surprising, and denied any heart problems to BOP. His blood pressure may be elevated, but he has never been on medication for hypertension. According to the CDC, hypertension *might* be a risk factor, but if Defendant has that condition, it is on the mildest end of the spectrum. Defendant is essentially a reasonably healthy forty-nine year old man whose risk is hardly at the level of extraordinary and compelling.

I next consider whether the combination of circumstances might rise to that level. There is no doubt that BOP has failed to keep the virus out of FCI Fort Dix. Of the approximately 2750 inmates there, 303 are currently positive, according to the BOP website.[6] And social distancing is all but impossible in prison. But in the absence of evidence of increased risk grounded in medical fact, "pointing to the mere existence COVID-19 either in a prison facility or in society generally is not enough to satisfy the 'extraordinary and compelling reasons'

---

[5]The record is not clear as to Defendant's body mass index ("BMI"). BOP records state that he is 5'10" tall, as does his PSR (¶ 65). Defendant provides medical records from before his conviction that state he is 5'8" tall. At the time the PSR was written, Defendant weighed 205 pounds, and his intake physical at BOP showed the same. In November 2019 Defendant reported to BOP that he had lost 35 pounds since he was incarcerated. Yet his most recent weight in the BOP records is reported as 197 pounds. At worst, assuming Defendant is 5'8" and weighs 197 pounds, his body mass index ("BMI") is exactly 30, the rock bottom of the range that, according to the Centers for Disease Control ("CDC"), poses an increased risk of severe illness. If he is a tad taller or thinner than that, he does not fall within the increased-risk category, but would be in the category of people who, according to the CDC, *might* be at increased risk.

[6]The Department of Justice Office of Inspector General website says 268 inmates at Fort Dix are currently positive.

requirement of 18 U.S.C. § 3582(c)(1)(A)." *United States v. Davis*, No. 14-CR-296, 2020 WL 5628041, at *3 (S.D.N.Y. Sept. 21, 2020)  (internal quotation marks omitted) (collecting cases) ; *see United States v. Otrosinka*, No. 12-CR-300, 2020 WL 5628060, at *4 (W.D.N.Y. Sept. 21, 2020) ("generalized fear" of contracting COVID-19 does not constitute extraordinary and compelling reason justifying release) (collecting cases).

     Defendant also fears substandard medical care if he should become sick. He provides an affidavit of a fellow inmate who, it appears, should have been taken to the hospital when he became seriously ill in April, and only survived because he was released.  That is a scary story, and Defendant's fear is not irrational.  But I expect that even BOP has learned a lot since April, and in any event Defendant thus far has not been infected (happily), so any worries about his not getting hospital treatment if he needs it are speculative at this point.

     Defendant further points to his positive contributions to and record in prison, including participating in many programs and devoting significant time to teaching other inmates.  It is to his credit that Defendant is helping others, while at the same time helping himself by occupying his time with meaningful activities.  But these commendable endeavors are not out of the ordinary for a privileged, educated person who finds himself behind bars.  Nor is it unusual that Defendant has a plan for his life after his release or poses a low statistical risk of recidivism.

     Finally, Defendant notes that prison conditions during the pandemic are more harsh than the Court envisioned at the time of sentencing.  That is true, but if that sufficed to rise to level of extraordinary and compelling, the doors to all prisons would be thrown open.  I do not mean to minimize the difficulty that the pandemic has caused for inmates (or those on the outside, for that matter), but those universal conditions do not give rise to extraordinary and compelling circumstances.  *See United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 331 (S.D.N.Y. 2020).

In short, I am dubious that the factors to which Defendant points amount, singly or in combination, to extraordinary and compelling circumstances. I recognize that a combination of factors might reach that level, even if none of them do so individually, but here there is an argument that Defendant's reasonably low health risk, along with the other non-health issues to which he points, do not meet the standard of extraordinary and compelling. But I will assume for purposes of this motion that they do.

I nevertheless have to consider the § 3553(a) factors. They militate against release less than a third of the way into Defendant's already-below-Guidelines sentence. The nature and circumstances of the offense are egregious. Defendant defrauded forty-five victims of over $22 million over a seven-year period. Most of the victims were his family and friends. He repeatedly lied to those close to him, knowing he was stealing their money and they would never get it back. The victims were crushed by his betrayal and breach of trust, suffering sleepless nights and questioning their own judgment and faith in humanity. And they were deeply harmed financially. College savings were lost; retirements were delayed; and one victim's wife had to take a second job as a waitress. Defendant's reaction as the scheme crashed led some victims to say he showed no remorse or is a sociopath, and the PSR said that he showed no empathy for his victims and that his regrets appeared to be personal (PSR at 27). He even spent a $37,000 refund he received after his arrest, rather than using it for restitution. Defendant had every advantage in life, unlike most Defendants I sentence. He was equipped to make an honest living, but chose to finance a life of luxury by deceiving those close to him. In connection with his sentencing, he overstated the extent to which a gambling addiction played a part in his offense and underplayed the lavish lifestyle he lived while swindling his friends. Releasing Defendant now, even to home detention, would undermine several of the § 3553(a) factors. It would not sufficiently address

5

the nature and seriousness of the offense, including the cold cruelty it involved and its devastating effects on the victims.  It would not sufficiently account for Defendant's lack of full remorse or his choice to steal from friends and family when he had other lawful options.  It would not be just punishment, would insufficiently deter others considering similar Ponzi schemes, and would introduce unwarranted sentencing disparities.  In short, the § 3553(a) factors outweigh the extraordinary and compelling circumstances.

For the reasons stated above, the motion is denied.  The Clerk of Court is respectfully directed to terminate Docs.74 and 76, and to send a copy of this Order to Defendant Michael Scronic, No. 79605-054, FCI Fort Dix, Federal Correctional Institution, Satellite Camp, P.O. Box 2000, Joint Base MDL, NJ 08640.

Dated: November 30, 2020
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.